**STATE of Tennessee, Appellee,**

v.

**Darryl L. WATKINS, Appellant.**

Supreme Court of Tennessee,
at Nashville.

Jan. 22, 1991.

Patrick T. McNally, Sr. Asst. Public Defender, Nashville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Kimberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

DAUGHTREY, Justice.

We granted review in this case in order to address a sentencing issue raised for the first time on direct appeal in the Court of Criminal Appeals. At the state's request, a panel of that court set aside the defendant's Range I sentence, holding that because he was on parole on another conviction at the time he committed the armed robbery in this case, he could be sentenced only in Range II. The intermediate court reached this result despite the fact that the lower range sentence was the product of a negotiated guilty plea, one which the state had affirmatively condoned in the trial court. Because this ruling conflicts with several unpublished opinions by other panels of the Court of Criminal Appeals, as well as with our recent opinion in *State v. Russell*, 800 S.W.2d 169 (Tenn., 1990), we reverse the judgment of the Court of Criminal Appeals and reinstate the defendant's original Range I sentence.

We note as a point of departure that the defendant, Darryl Watkins, was prosecuted, convicted, and sentenced prior to the effective date of the new penal code, November 1, 1989. Hence, the references in this opinion are to statutory provisions as they existed at the time of his plea and sentencing.

Watkins was initially charged in a two-count indictment with committing armed robbery and with being an habitual criminal. At the time, armed robbery carried a sentence of 10 years to life, T.C.A. § 39–2–501. A Range I sentence therefore would have fallen between 10 and 35 years, and a Range II sentence between 35 years and life. T.C.A. § 40–35–109. Upon a finding that a defendant was an habitual criminal, based on his conviction of at least three prior qualifying felonies, his sentence for armed robbery was subject to automatic enhancement to a life sentence. T.C.A. § 39–1–806.

The indictment in this case charged Watkins with four prior felony convictions, three of them involving home burglaries. At the time of sentencing, Watkins was 25 years old. He not only had five prior felo-

ny convictions as an adult, but also a juvenile record stretching back to age eight. It was primarily this extensive criminal record that motivated the trial judge to impose a 30–year sentence, rather than follow the state's recommendation of a 15–year sentence for Watkins. That recommendation had first come when the defendant waived his right to trial and entered what is referred to in the record as a "best interest" guilty plea, based upon a plea agreement with the prosecutor.

We do not have before us a transcript of the guilty plea hearing. However, it appears that in return for Watkins's guilty plea to the first count of the indictment, charging armed robbery, the state agreed to dismiss the habitual criminal charge. Moreover, although the document was not included in the record on appeal, we surmise that the state filed, but later withdrew, a notice of intent to seek enhanced punishment under T.C.A. § 40–35–202. Such notice was a statutory prerequisite to the imposition of a Range II sentence under Tennessee's then-existing penalty statutes. *Id.*

As part of the plea bargain, the prosecution and the defense also agreed that the trial judge was not to be bound by the state's recommendation of a 15–year sentence. At the guilty plea hearing, Watkins was put on notice that his actual sentence might be as low as 10 years or as high as 35 years.

At the later sentencing hearing, the trial judge reviewed the defendant's presentence report, rejected the state's 15–year recommendation and, based upon appropriate enhancing and mitigating factors in T.C.A. §§ 40–35–110 and 40–35–111, imposed a 30–year sentence on the defendant. Defense counsel thereafter appealed the trial court's determination of sentence to the Court of Criminal Appeals, alleging that it was excessive under the facts.

In its response brief in the appeals court, the state not only took the position that the defendant's Range I sentence was not excessive, but also argued for the first time that it was unauthorized. The state contended, and the Court of Criminal Appeals

ultimately agreed, that because of the defendant's parole status, the statutory language in TCA § 40–35–107 mandated a Range II sentence, regardless of other circumstances.

The sentencing provision which governed this situation at the time, T.C.A. § 40–35–107(3)(b), provided that a felony committed while the perpetrator is on parole is an "especially aggravated offense." T.C.A. § 40–35–107(8) further required that "[a] defendant who is found by the court beyond a reasonable doubt to have committed an especially aggravated offense shall receive a sentence within Range II." The state argued before the Court of Criminal Appeals that the term "shall" in this context is the equivalent of the word "must," citing *Home Telegraph Co. v. Mayor and City Council of Nashville,* 118 Tenn. 1, 14–15, 101 S.W. 770, 773 (1907). From this authority, the state reasoned that the trial judge did not have the discretion to impose anything other than a Range II sentence. In a brief opinion, the Court of Criminal Appeals panel that heard this case agreed. It therefore remanded the case for imposition of a Range II sentence.

The defendant vigorously contests this ruling, on two grounds. First, he argues that the state had waived the right to raise this issue in the trial court, relying by analogy on this court's decision in *Mahler v. State,* 735 S.W.2d 226 (Tenn.1987). Second, he contends that the state's failure to raise the issue in a timely manner deprived him of certain due process rights on appeal.

We agree that the *Mahler* decision, while not precisely on point, controls the outcome in this case. That conclusion is reinforced by our subsequent interpretation of *Mahler* in *State v. Russell,* 800 S.W.2d 169 (Tenn. 1990).

In *Mahler,* the defendant was originally charged with first degree murder, but he successfully negotiated an agreement with the state permitting him to plead guilty to a reduced charge of second degree murder. Under the terms of the agreement, Mahler was sentenced as an especially aggravated offender to a Range II sentence of 50 years, even though there was no proof to

show that he qualified for a Range II sentence. Mahler later became disenchanted with his 50–year sentence and tried to have it overturned for lack of proof that he was an especially aggravated offender. We upheld the sentence on the ground that "any question as to the classification of appellant [Mahler] as a Range II offender or as to his release eligibility was waived by the guilty plea." *Id.* at 228.

Thus, *Mahler* stands for the proposition that an erroneous range classification can be waived by the action of a defendant. We conclude that, proverbially speaking, what is applicable to the goose ought to be applied to the gander. The same waiver rule that was invoked against the defendant in *Mahler* should apply equally to the state, especially where, as here, it enters into a negotiated plea agreement and thus actively encourages the trial court to set the defendant's sentence in the "wrong" range.

This result is wholly consistent with *Russell.* There, the defendant was charged in a multi-count indictment with aggravated rape, incest, and crime against nature, all committed against the same victim. After Russell's conviction by a jury, the trial judge imposed Range I sentences on all three counts. On appeal, the state alleged for the first time in its reply brief that Range II sentencing should have been imposed instead.

The Court of Criminal Appeals agreed on the merits. However, it held that the state's challenge to the sentence was unreviewable, because the state had not appealed the propriety of the sentence, but had merely "piggybacked" its complaint onto the defendant's appeal. *Id.* at 170. We rejected this procedural ruling, holding that the filing of a separate cross-appeal was unnecessary and that the issue could properly be raised in the state's reply brief, as permitted by Rule 27 of the Rules of Appellate Procedure. *Id.* at 171.

But, although we found no waiver in connection with the method used to raise the issue on appeal, we nevertheless held that, under the reasoning of *Mahler*, the state had "waived the sentencing issue by

failing to file a notice of intent to seek Range II sentencing or otherwise rais[ing] the issue in the trial court." *Id.* at 172. Hence, we concluded that Russell should have received Range II sentencing on the aggravated rape count, because the indictment alleged that the victim was under the age of 13, making the offense automatically subject to Range II sentencing under then-existing statutory requirements. T.C.A. _____. This charge, we concluded, constituted notice sufficient to subject the defendant to enhanced punishment, even in the absence of separate notice by the state of its intent to seek Range II sentencing. The statutory notice, otherwise required by T.C.A. § 40–35–202, would have been redundant as to this offense.

As to Russell's remaining two offenses, however, we affirmed the judgment of the intermediate court and approved the imposition of Range I sentences. In doing so, we held that by "fail[ing] to litigate the matter in the trial court," the state had waived its right to insist upon enhanced punishment "based on defendant's release status, or the nature of injuries inflicted, or his prior convictions." *Id.* at 172. We concluded, furthermore, that "the state would waive 'Range II' sentencing by failing to file the required notice, failing to present proof of the basis relied on, or, deliberately, *by striking a Range II notice in exchange for a guilty plea.*" *Id.* at 172 (emphasis added). The latter procedure, we noted, "is similar to allowing a defendant to plead to a lesser offense, and is a common tool in plea bargaining." *Id.*

That "common tool" was obviously utilized by the state in securing the defendant's guilty plea in this case. Simply put, the state cannot now be heard to complain about the result on appeal, where the parties have negotiated in good faith in the trial court and where there is no allegation of fraud on the part of the defense nor of misfeasance on the part of the prosecutor.

We have carefully considered the state's argument that in representing the prosecution on appeal, the Office of the Attorney General is more than a mere extension of the local District Attorney's office and

should not be bound on appeal by the action of the prosecutor in the trial court. The Attorney General undoubtedly has a role to play in ensuring that errors in the trial court prejudicial to the state are corrected on appeal. But there is a difference between seeking to correct errors in the trial court not deliberately of the state's making, and second-guessing the judgment of the local prosecutor in settling a case. Where such a settlement is not illegal and does not result in manifest injustice (and, certainly, the sentence in this case fits neither category), the state should be held on appeal to the same waiver rule as the defendant. Such a rule is particularly important in this context, because it ensures adequate notice and, therefore, fundamental fairness to a defendant engaged in the delicate process of making the determination whether to plead guilty or to go to trial.

Because we conclude that the state has waived review of the defendant's sentence, we find no need to address further the defendant's assertion that his due process rights have been violated in this case. Any argument predicated upon a theory of vindictiveness has been answered by the discussion in *State v. Russell, supra,* 800 S.W.2d at 173–174.

The judgment of the Court of Appeals is reversed and that of the trial court is reinstated. Under all the circumstances, we find that the original 30–year sentence is not excessive.

The judgment of the Court of Criminal Appeals is reversed and that of the trial court is reinstated. Costs will be taxed to the state.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.